CULPEPPER, Judge.
This is a suit for workmen’s compensation benefits, penalties and attorney’s fees. The plaintiff employee is Gerald P. Ber-geron. The defendant is The Travelers Insurance Company, compensation insurer of plaintiff’s employer, Odell Vinson Oilfield Service. The district judge awarded benefits for total and permanent disability but denied penalties and attorney’s fees. Defendant appealed. Plaintiff answered the appeal, seeking penalties and attorney’s fees.
The issues are: (1) Was plaintiff a common laborer? (2) Is plaintiff permanently and totally disabled by the loss of his right thumb? (3) Should penalties and attorney’s fees be awarded ?
The facts show that plaintiff is 27 years of age and has an eighth grade education. Before the accident he worked as a welder in a shipyard for a short time but most of his employment was as a roustabout in the oil and gas industry. At the time of the accident on May 8, 1969, he had been working for about nine months for the defendant, Odell Vinson Oilfield Service, as a roustabout. His duties consisted of threading and connecting pipes to tanks and towers, tightening collars and valves and breaking them loose, painting, digging trenches for cement forms, spreading shells, loading and unloading trucks, and, generally, any such common labor work in the oilfields. He used a variety of tools, such as shovels, pipe wrenches, dies for threading pipe, hammers, paint brushes, wheel barrows, pliers and the like.
At the time of the accident, he was unloading a truck. A heavy gin pole slipped and cut off his right thumb in the proximal one-third of the proximal phalanx. He was taken to the hospital where the wound was debrided and closed by Dr. Edmond C. Campbell, an orthopedic surgeon.
On June 30, 1969, Dr. Campbell reported to the defendant insurer that plaintiff’s *190 wound was healing normally and he had given the patient permission to resume work effective about June 23, 1969. Plaintiff actually did return to work for the same employer at the same job during the latter part of June, 1969.
On September 3, 1969, Dr. Campbell reported to the defendant that he had discharged the plaintiff from further treatment and that he had a permanent disability of 100% of the thumb and 50% of the hand as a whole.
Workmen’s compensation payments were paid through June 19, 1970, and it is not disputed that plaintiff has been paid benefits for 50 weeks under the schedule of payments provided for the loss of a thumb set forth in R.S. 23:1221.
Plaintiff remained at work for Vinson, performing the work of a roustabout for about four months. He was laid off in October 1969 with the rest of his crew because work was “slow”. Thereafter, he tried to find other work as a roustabout, a welder, and a service station attendant but was unsuccessful. The reason given to plaintiff when he applied for these jobs was that work was “slow”.
The first issue is whether plaintiff was a common laborer. Both the plaintiff and his foreman, Mr. Walter Cooper, testified that his job classification and wage was that of a common laborer, rather than a skilled employee. Plaintiff contends that since his duties included threading pipe, painting and using such tools as hammers and pliers that his work was at least semiskilled. Under the facts we think it is clear that plaintiff’s job classification was that of a common laborer, who performed any of a broad variety of tasks. He had no special skill for which he was employed. In Anderson v. Rowan Drilling Company, 150 So.2d 828 (La.App., 3d Cir. 1963), writ of certiorari refused 244 La. 222, 151 So.2d 693, we held that an oilfield roustabout is a common laborer. See also the general discussion in Malone, Louisiana Workmen’s Compensation, Section 275.
The next isue is whether plaintiff is permanently and totally disabled by the loss of his right thumb. The test to be applied to a common laborer is set forth in Thomas v. Gates, Inc., 157 So.2d 263 (La.App., 3rd Cir. 1963) as follows:
“The jurisprudence is settled to the effect that a common laborer will be considered as being totally disabled from doing ‘work of any reasonable character,’ within the meaning of the Louisiana Workmen’s Compensation Act, if his 'injuries disable him from performing work of a kind similar to that which he was accustomed to performing, or if his injury is of such a character that it appears that he will be substantially handicapped in competing with other able-bodied workers in the regular common labor market.”
As stated above, Dr. Campbell estimated plaintiff lost 50% of the use of his right hand. Dr. Daniel C. Riordan, an orthopedic surgeon who saw plaintiff on October 30, 1969, expressed the opinion that the loss of use of the right hand was 40%. Dr. Riordan also found plaintiff had a “mildly painful neuroma on the radial side of the scar.”
Plaintiff testified that although he can use ordinary tools, such as shovels, hammers, wrenches, etc., he has difficulty. He demonstrated to the district judge during the trial that he has to hold a hammer between the index and middle fingers and on prolonged use this causes blisters and pain. The same is true of a wrench and any other tool which requires a firm grip. He also said that when he applies pressure on a hand tool he has pain in the thumb stump and in the palm of his hand. He has to adjust a wrench with his left hand.
Mr. Shirley Fontenot, who was working with plaintiff as a roustabout at the time of the accident, testified he thought plaintiff would have difficulty with the tasks which require prolonged hard labor with these tools.
*191 Mr. Walter Cooper, the foreman on the job at the time of the accident, testified that after plaintiff returned to work he was clumsy at first but after a while he performed his work satisfactorily. Mr. Cooper said that plaintiff was a good worker and he would hire him again, even after he lost his thumb. But, when asked whether the loss of the thumb would affect plaintiff’s ability to get a job he testified:
“A, Well, yeah., He’d have to be examined. I don’t know about the insurance company turning him down or not.
“Q. But there’s some doubt in your mind as to whether or not he would be acceptable.
“A. That’s right. I don’t know.
“Q. It wouldn’t help him to get a job, having that thumb gone.
“A. It wouldn’t help him, that’s for sure.
“Q. It would hurt ?
“A. With that thumb off, it wouldn’t help him.”
The trial judge who saw and heard the witnesses and who was particularly impressed with the demonstration of plaintiff’s difficulty in handling the various tools, reached the following factual conclusions which are amply supported by the evidence:
“The Court would like to have had the benefit of opinions from more persons experienced in oil field work as to whether or not a person handicapped as Mr. Bergeron is could satisfactorily perform heavy manual labor without substantial difficulty. However, it is necessary to decide the case on the basis of the evidence presented.
“As I appreciate the jurisprudence, v/hen a person sustains an injury during the course of his employment and because of pain and suffering or substantial handicap he is unable to perform all of the duties of the type of work he is doing when injured, such employee is considered to be totally disabled.
“On the basis of the evidence presented, the Court does not believe this handicapped plaintiff can perform the heavy manual labor that a roustabout is required to do in the oil field, particularly the handling and using of heavy tools. Therefore, under the present jurisprudence he is totally and permanently disabled, and is entitled to the compensation benefits provided therefor.”
In Thomas v. Gates, Inc., supra, a common laborer in a saw mill lost two phalanges of the index finger and all of the middle and ring fingers of the left hand. He was left with a neuroma of the stump of the index finger. Various estimates by the physicians were that he lost about 50% of the use of the hand as a whole. We reviewed the jurisprudence in cases of this type and concluded that Thomas was totally and permanently disabled. In the present case, the loss of the entire thumb and the neuroma of the stump are certainly as disabling as in the Thomas case.
The final issue is penalties and attorney’s fees. There was a serious factual dispute as to whether plaintiff was permanently and totally disabled. The defendant was not arbitrary or capricious in refusing compensation benefits. Penalties and attorney’s fees were properly denied.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.